```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

MICHELE CARIGNAN,                 :
                                  :
     Plaintiff,                   :
                                  :
V.                                :  CASE NO. 3:04-CV-332(RNC)
                                  :
NATIONWIDE MUTUAL INSURANCE CO.,  :
                                  :
     Defendant.                   :

                         RULING AND ORDER

Plaintiff Michele Carignan sues her former employer, Nationwide Mutual Insurance Company ("Nationwide"), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). Ms. Carignan claims that Nationwide fired her because she is a woman and complained to supervisors about gender discrimination. Nationwide denies these charges and has moved for summary judgment. There are genuine issues of material fact with respect to both the gender discrimination and retaliation claims. Accordingly, Nationwide's motion for summary judgment is denied.

I.   Facts

The pleadings, depositions, affidavits and other exhibits on file show the following. Ms. Carignan worked for Nationwide between 1984 and March 2002. During that time, she was promoted through various positions from statistical clerk to master claims representative.

Ms. Carignan assumed the position of master claims

representative, from which she was ultimately terminated, in 1997. For four years, her performance in that position satisfied Nationwide's expectations. However, in the summer of 2001, she received negative performance evaluations from her supervisor, Mr. Ayer, as well as from an independent team of reviewers deployed annually by Nationwide as a control on employee evaluations conducted by managers. According to these evaluations, Ms. Carignan was not meeting Nationwide's minimum standard of 75% achievement in three areas of service, scoring just 58% on "initial contact," 0% on "face-to-face contact," and 42% on "subsequent contact." These figures were lower than the 2001 average for Mr. Ayer's district, 64% on initial contact, 12% on face-to-face contact, and 68% on subsequent contact. Ayer Dep. at 281-283.

The negative evaluations of Ms. Carignan's work during the summer of 2001 initiated a set of progressive disciplinary measures. In October 2001, Mr. Ayer and his supervisor, Associate Director Brian Brooks, met with Ms. Carignan to discuss her performance and subsequently gave her a "verbal warning memorandum," which informed her of the three areas in which she needed to improve.

Nationwide assessed Ms. Carignan's performance again in November 2001. The November evaluation indicated that although her initial contact with policyholders had improved, her initial contact with claimants as well as her subsequent contacts had deteriorated. After the November evaluation, Ms. Carignan once again met with Mr.

Ayer, who extended the October verbal warning for an additional thirty days and gave her a second verbal warning memorandum.

On November 21, 2001, Ms. Carignan's poor work performance was the subject of a meeting attended by Ms. Carignan, Mr. Ayer, and a member of Nationwide's personnel department, Ms. Eileen Donadio. At that meeting, Ms. Carignan accused Mr. Ayer of unreasonably continuing to discipline her in response to pressure from his supervisor, Mr. Brooks. Donadio Dep. at 74. Ms. Carignan then alleged that Mr. Brooks was discriminating against female employees, some of whom she mentioned by name. *Id.* at 74-76. At some point (the record is unclear as to exactly when), Ms. Carignan also complained to Mr. Ayer that management generally was applying different standards to male and female employees, and that she was being treated unfairly on the basis of her gender. Ayer Dep. at 266. According to Mr. Ayer, Ms. Carignan also told him that she wouldn't stand for being "targeted" by the company and would do whatever was necessary to protect herself, including consulting a lawyer. *Id.* at 302-303.

On January 18, 2002, Mr. Ayer determined that Ms. Carignan's performance in the areas of face-to-face contact, initial contact, and subsequent contact remained below minimum acceptable standards. According to Ms. Carignan, this assessment was inaccurate and unfair because some of the files deemed inadequate contain records of what Ms. Carignan believes were appropriate client contacts. *See* Carignan

Aff., ¶¶ 7-16. Nonetheless, based on his negative evaluation of Ms. Carignan's performance, Mr. Ayer implemented the next step in Nationwide's progressive discipline policy, placing Ms. Carignan on "work improvement."

After a month of work improvement, Mr. Ayer concluded that, although Ms. Carignan's performance in the three previously-identified areas had improved, it remained below acceptable levels. Ms. Carignan scored 47% on initial contact with the claimant, 60% on face-to-face contact, and 64% on subsequent contact. By comparison, the average scores on these components in Mr. Ayer's district during this period were 58%, 67% and 67%, respectively. *See* Pl.'s Ex. 10, at NAT909. In Ms. Carignan's view, Mr. Ayer was wrong about her performance and had overlooked evidence in the files that Ms. Carignan had at least made appropriate subsequent contacts. *See* Carignan Aff. ¶¶ 7-16.

Based on his assessment that Ms. Carignan was still failing to meet the required standard, Mr. Ayer placed Ms. Carignan on "work probation." At some point in the following month, Mr. Ayer spoke about Ms. Carnigan's future at the company with Denny Aultman of the personnel department and their boss, New England Claims Director Jennifer Robinson. During this meeting, Mr. Ayer and Mr. Aultman both raised the possibility of moving Ms. Carnigan to a lower-level position rather than firing her. This approach had been taken with other employees, including a Mr. Kirk Boushie who, after a

4

successful stint in the property claims area, had failed to meet expectations in the upper-level position of casualty claims associate, and had therefore been transferred to a Level 1 casualty position.

Mr. Ayer testified that, although he considered Ms. Carignan qualified for a lower position, and although Mr. Aultman drew attention to her long history of service at Nationwide, they were told that reassigning her was not an option because there weren't any openings and her relationship with Nationwide had become adversarial.  Mr. Ayer understood that this was a reference to Ms. Carignan's refusal to accept the results of the disciplinary process and her threats about consulting a lawyer.  Ayer Dep. 252-254, 266. In contrast to Mr. Ayer's account, Ms. Robinson, who made the final decision to fire Ms. Carignan, testified that she based her decision not to offer Ms. Carignan a lower-level position entirely on Mr. Ayer's assertion that Ms. Carignan would not perform well.  Robinson Dep. at 125-126.   Significantly, Ms. Donadio of the personnel department believed that Ms. Carnigan should be considered for a lower level position and recalls that such positions were available at the time.  Donadio Dep. at 64.

Shortly after meeting with Ms. Robinson and Mr. Aultman, Mr. Ayer again assessed Ms. Carignan's performance and found it unsatisfactory.  On March 18, 2002, he informed Ms. Carignan that her employment was being terminated due to poor performance.

II. Discussion

Summary judgment may be granted only when there "is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing the evidence, the Court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

A.  Gender Discrimination

Ms. Carnigan alleges that Nationwide violated Title VII by terminating her on the basis of her gender. Nationwide contends that her claim cannot survive the familiar three-step burden-shifting analysis for testing the sufficiency of discrimination claims established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1.  Prima Facie Case

In the first step of the burden-shifting analysis, Ms. Carignan must demonstrate that: (1) she is a member of a protected class; (2) was qualified for the position; and (3) suffered an adverse

6

employment action, (4) in circumstances raising an inference of discrimination. *See, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (applying the burden-shifting analysis to a claim of gender discrimination).

Nationwide contends that Ms. Carignan's claim fails on the fourth prong, but I agree with her that a jury could infer gender discrimination from Nationwide's decision to fire her for poor performance while reassigning a similarly situated male employee, Kirk Boushie, to a lower-level position. The Second Circuit has made it clear that whether individuals are similarly situated is for a jury to decide unless "it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001). Because there is a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases," *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), a jury must determine the significance of Nationwide's disparate treatment of Mr. Boushie. Accordingly, Ms. Carignan has satisfied the minimal burden of establishing a prima facie case.[1]

---

[1] Nationwide initially argued that Ms. Carignan cannot satisfy the second prong because she did not perform satisfactorily in the position from which she was terminated. Nationwide now concedes, however, that Ms. Carignan's years of experience in the position enable her to satisfy the qualification prong. *See, e.g., Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he satisfies the employer . . . [W]here discharge is at issue and the

2.   <u>Pretext</u>

Nationwide contends that its legitimate reason for dismissing Ms. Carignan – repeated poor performance – cannot be shown to be a pretext for gender discrimination. Again, I disagree. The record reflects that Ms. Carignan performed satisfactorily for Nationwide for 17 of 18 years, performed not far below the average in Mr. Ayer's district before her termination, and was qualified for transfer to a lower-level position that Nationwide had previously encouraged as an alternative to termination. On this basis, a jury could reasonably infer that Nationwide's decision to terminate Ms. Carnigan is not fully explained solely by poor performance.

The question remains whether Ms. Carignan's evidence would permit a jury to conclude that gender discrimination played a role in the termination. *Reeves*, 530 U.S. at 147. I conclude that the evidence is marginally adequate to withstand summary judgment. Given Ms. Donadio's testimony about the fate of other female employees supervised by Mr. Brooks, and Mr. Ayer's testimony that he discussed Ms. Carignan's performance and termination with Mr. Brooks, a jury could find that an "individual shown to have the impermissible bias played a meaningful role in the . . . [termination] process." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999). Accordingly, summary judgment on this claim is

---

employer has already hired the employee, the inference of minimal qualification is not difficult to draw.").

not appropriate.

B.   Retaliation

Ms. Carignan further alleges that Nationwide fired her in retaliation for complaining about Mr. Brooks' discrimination against female employees.  Ms. Carignan's Title VII retaliation claim is analyzed under the same burden-shifting framework as her gender discrimination claim. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  Nationwide attacks the sufficiency of Ms. Carignan's prima facie case, which requires her to show that: (1) she engaged in a protected activity; (2) her employer knew about the activity; (3) the employer took adverse employment action against her; and (4) there is a causal connection between the adverse action and the protected activity. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006).  Nationwide also contends that Ms. Carignan cannot rebut its neutral reason for terminating her.  I disagree.

Ms. Carignan has made out a prima facie case of retaliation. Her complaints to Mr. Adler and Ms. Donadio in November 2001 concerning Mr. Brooks' perceived gender bias would permit a jury to find that she engaged in protected activity. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 80 (2d Cir. 2001).  Mr. Ayer's testimony concerning his discussion with Ms. Robinson would permit a jury to find that Ms. Carignan was subsequently fired, at least in part, because of those complaints and her threats to consult a

9

lawyer, which made her relationship with Nationwide "antagonistic." Ayer Dep. at 253.  Finally, as explained above, the evidence would permit a jury to conclude that the plaintiff's firing is not fully explained by poor performance alone.  Summary judgment on the retaliation claim is therefore inappropriate.

III. <u>Conclusion</u>

Accordingly, Nationwide's motion for summary Judgment [doc. # 32] is hereby denied

So ordered.

Dated at Hartford, Connecticut this 3oth day of September 2006.


_____/s/_____
Robert N. Chatigny
United States District Judge